UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT POWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 20 C 6383 |
| | ) |
| ILLINOIS DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Robert Powell brought this action against the Illinois Department of Corrections ("IDOC"), alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. Before the Court is the IDOC's motion for summary judgment. For the reasons set forth below, the IDOC's motion is denied.

## BACKGROUND

The following facts[1] are undisputed except where noted. Any asserted facts or factual disputes that were not supported by evidence or were immaterial or otherwise inadmissible have not been included.

---

[1] Powell submitted, without leave of Court, 76 additional facts—well in excess of the 40 permitted by the Local Rules. *See* L.R. 56.1(d)(5) ("An opposing party's LR 56.1 statement of additional facts must not exceed 40 numbered paragraphs. A party must seek the court's permission before exceeding these limits."). The IDOC asks the Court to strike and/or disregard paragraphs 41–76.

Powell was an inmate in the custody of the IDOC, incarcerated at the Pinckneyville Correctional Center ("Pinckneyville") from February 13, 2018, to February 13, 2019, and then at the Dixon Correctional Center ("Dixon") from February 13, 2019, until his supervised release from IDOC custody on November 22, 2019. He has a history of difficulty ambulating and using an assistive device to get around. He also has chronic asthma and his medical records report a history of gunshot wounds and a spinal surgery in 2016.

When Powell arrived at Dixon, he was using a cane to ambulate. He was housed in general population and had to walk outside to the healthcare unit to obtain his daily medications. For his first nine days at Dixon, Powell walked to pick up his medication without incident. However, on February 23, 2019, while being escorted to the healthcare unit, Powell slipped on some ice on the sidewalk and fell. He was taken to the hospital and, upon his return, was permanently housed in the healthcare unit for the rest of his time at Dixon.

Powell alleges that at all relevant times he had a "medically prescribed" need for a walker and/or a wheelchair. He asserts that his disability was "evident and obvious" and that the IDOC "knew or should have known" his condition necessitated a walker and/or wheelchair. Powell further contends he would not have fallen if he had been using his walker instead of the cane.

---

The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015). We exercise that discretion here and decline to consider the facts asserted in paragraphs 41–76.

2

At his deposition, Powell testified that he had a prescription for a walker during the entire period of his incarceration at Pinckneyville and Dixon; however, Powell could not recall the name of the medical professional who prescribed the walker and could not produce the prescription. Powell additionally stated he never had a cane while at Pinckneyville, but on September 17, 2018 (approximately five months prior to his transfer to Dixon), a physical therapist issued a cane permit with an indefinite expiration date. There is also a "Receipt for Accountable Items" dated September 10, 2018, which lists a cane and is signed by both Powell and the physical therapist.[2]

Powell testified that he had a walker in his possession when he arrived at Dixon, but an unknown ADA official confiscated it. However, prior to his transfer from Pinckneyville to Dixon, on February 8, 2019, Pinckneyville healthcare staff completed the top portion of an Offender Health Status Transfer Summary ("Transfer Summary"). A cane is noted in the section for "assistive devices." And, on February 14, 2019, the morning after his arrival at Dixon, the bottom half of the Transfer Summary was filled out by healthcare staff at Dixon, and "use of cane" is noted. Under "current complaints," "low bunk permit" is written. There is no reference to a walker on the Transfer Summary.

---

[2] The parties dispute whether Powell had a medical prescription (not just a permit) for a cane at the time of his fall. The IDOC claims that the cane permit and receipt either count as a prescription or are conclusive evidence of an existing prescription. However, Powell says there is nothing in the record that establishes the cane permit and receipt constitute a prescription, and the permit was issued by a physical therapist, not a medical doctor. The physical therapist testified that he makes recommendations for assistive devices, and a doctor would have to agree with his recommendations.

3

Powell testified that, prior to his fall, he complained to a Dixon ADA official about not being able to walk without a walker but does not recall that official's name. Dixon's ADA Coordinator testified that any complaints the ADA committee receives from inmates at Dixon related to requests for accommodations are logged into an Excel spreadsheet, referred to as the "Request Tracker." Based on his review of the Request Tracker, the ADA coordinator confirmed that there was no complaint from Powell prior to his fall concerning his lack of a walker or the distance he had to walk to get his medications each day.

Powell's Cumulative Counseling Summary ("CHAMPS") contains a record of every written grievance that Powell submitted to IDOC staff during his incarceration at the IDOC from 2005 until his discharge in 2019. Powell's CHAMPS contains no indication that he submitted any grievances or other complaints about the need for a walker or his walker being confiscated. Additionally, the three grievances that are related to and dated after Powell's fall on February 23, 2019, make no mention of a walker—either as a cause of his fall or as a request for relief.

In grievance #19-001041, Powell wrote, "Grievant arrived at Dixon C.C. on or about 2-20-2019 and has an ADA condition that renders him to use a walking cane." Dkt. # 41, ¶ 39. The summary section of grievance #19-001041 states that "while struggling to walk [with] his cane" on the sidewalk covered with water and ice, his feet slipped from under him. *Id.* ¶ 41. The grievance summary spans two pages, but never references a need for a walker or a complaint about a walker being taken away.

4

Additionally, according to a progress note dated February 20, 2019, Powell complained of back and leg pain for the previous couple of days. Under "cause of pain," the nurse indicated that Powell attributed his pain to "mattress & [history] of back problems." Dkt. # 37-8, at 1. The nurse circled "difficulty ambulating" and noted the use of a cane. *Id.* at 2. There is no mention of a walker or complaint about the lack of a walker in the progress note.

The parties dispute whether Powell had a prescription or permit for a walker at the time of his fall. Powell points to an April 18, 2018 "Low Gallery Permit"[3] which notes the use of a walker under "Absolute Criteria for Low Gallery Permit," and the testimony of Dr. Kul Sood, a Wexford Health Services physician, that if a patient had a walker permit, he would continue the permit "as long as [the patient] is with us." Dkt. # 40-3, at 4. The low gallery permit has a 30-day expiration date. Dr. Sood did not personally write the notation about the walker. Dr. Sood testified that he has no independent recollection of Powell and did not know if Powell was ever prescribed a walker or, if he was, the duration of the prescription.

Powell's treating physician, Dr. Troy Buck, stated that he has no knowledge of Powell's mobility prior to his fall. Dr. Buck testified that if a patient has significant balance issues or a real difficulty with ambulating, then progression to a walker is often indicated. He also testified that it is common for treaters to recommend that a patient

---

[3] The parties dispute whether the permit is actually a low gallery permit or is really a low bunk permit.

transition from a wheelchair to a walker, and from a walker to a cane, and from a cane to no assistive device in order to increase flexibility and strength.

The Dixon ADA coordinator testified that when the ADA committee receives requests for accommodations that involve mobility or other similar medical issues, those requests are forwarded to the healthcare unit. The ADA committee would not be aware of any request from an inmate that the inmate did not submit to the ADA committee either directly or through the grievance process. Furthermore, inmates' medical records would not be available to the non-medical administrators on the ADA Committee due to protections under HIPAA. The ADA coordinator testified that he has no specific information that provision of a walker to an individual would be unduly costly, extensive, substantial, or disruptive. He does not make any decisions about safety and security related to the use of walkers at Dixon.

No one on the ADA committee at Dixon has received ADA training involving mobility limitations. Laura Emmole, a registered nurse at Dixon, testified she probably participated in some ADA accommodation review when she was first hired, but there is no annual training that she is aware of.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere

6

scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Alongside the ADA, the Rehabilitation Act also provides protections for inmates, and the two statutes are materially identical. *A.H. by Holzmuller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 591 (7th Cir. 2018). Given the similarities between the statutes, we apply the same analysis to a plaintiff's claim under either one. *Id.* at 592.

In the prison context, a plaintiff can make out a prima facie case of discrimination under the ADA by showing: (1) he is a qualified person; (2) with a disability; (3) the

7

IDOC denied him access to a program or activity because of his disability or otherwise subjected him to discrimination; and (4) the denial or discrimination was by reason of his disability. *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022); *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). "Refusing to make reasonable accommodations is tantamount to denying access." *Jaros*, 684 F.3d at 672.

With Powell no longer incarcerated, he seeks only money damages. To recover compensatory damages, Powell must show "intentional conduct (and not mere negligence)," meaning he must show the IDOC "acted with deliberate indifference to rights conferred by the ADA and Rehabilitation Act." *Shaw*, 52 F.4th at 334 (citing *Lacy v. Cook Cnty., Ill.*, 897 F.3d 847, 862 (7th Cir. 2018)).

The parties do not dispute that Powell is a qualified person with a disability. The IDOC, however, argues summary judgment is appropriate because Powell was not denied access to any program or activity, nor was he subjected to intentional discrimination because of his disability. Powell, on the other hand, argues he was denied the benefits of the services, programs, or activities from the prison because his walker was confiscated and he was placed in a unit that required him to walk outdoors to retrieve his daily medications. And, on the day of his fall, he was completely denied access to his medications.

Powell argues he need not show a complete denial of access, citing *Jaros*. In *Jaros*, the plaintiff (who suffered hip problems), occasionally missed meals because he would not walk fast enough to the cafeteria and limited his showers to four per month

8

because of his fear of falling. 684 F.3d at 669. The Seventh Circuit held that Jaros pleaded a plausible claim under the Rehabilitation Act because "[t]he refusal to accommodate [the plaintiff's] disability kept him from accessing meals and showers on the same basis as other inmates." *Id.* at 672. Powell says his situation is the same—the IDOC "did not completely deny access, but rather made access extremely difficult given [Powell's] medical condition." Dkt. # 39, at 13.

In the IDOC's view, the fact that Powell successfully walked to the healthcare unit to retrieve his medications on a daily basis until his fall and his subsequent housing in the healthcare unit means that he cannot show he was denied the benefits of any services, programs, or activities. Unlike in *Jaros*, there is no evidence or testimony that Powell missed any of his scheduled medications or decided to skip the medication for fear of falling.

Powell says he should have been given a walker or been housed in the healthcare unit "in order to prevent the risk associated with the prescription journey as reasonable accommodations to allow his access to the facility." Dkt. # 39, at 9. However, "[t]he question is not whether other modifications could have been made, . . . but whether the accommodations made were reasonable." *Hildreth v. Butler*, 960 F.3d 420, 431 (7th Cir. 2020).

Under the ADA or the Rehabilitation Act, a reasonable accommodation does not require "a perfect cure for the problem." *See Stewart v. Cnty. of Brown*, 86 F.3d 107, 112 (7th Cir. 1996). In defining a reasonable accommodation in the prison context,

9

courts consider the accommodation "in light of the overall institutional requirements," including security and safety concerns, feasibility, and "administrative exigencies." *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996). This determination is "highly fact-specific" and requires a case-by-case analysis. *A.H. by Holzmuller*, 881 F.3d at 592. The IDOC argues that the accommodation of a cane was reasonable, and Powell cannot prove that he required a walker at the time of his fall.

In the Court's view, there is a question of fact as to whether the cane was a reasonable accommodation. There is nothing in the record (other than Powell's testimony) that indicates exactly when Powell stopped using his walker, or why. The fact that there was a cane permit issued in and of itself does not mean that he was no longer using or in need of a walker. We also do not know why the cane permit was issued in the first place. Was it because a walker was no longer medically necessary? Was it prescribed as an alternative method of assistance for certain circumstances?

If a jury were to credit Powell's testimony that he used a walker the entire time he was at Pinckneyville, it could reasonably conclude that a cane was an insufficient or unreasonable accommodation. A jury could also reasonably conclude that requiring an inmate whose ability to ambulate depends on a cane to walk outside in icy conditions to get his medically necessary prescriptions is not a reasonable accommodation. The IDOC has not shown that providing Powell with a walker would have been unduly burdensome or posed a security risk.

The IDOC argues that even if Powell could prove that he required a walker rather than a cane, that specific requirement was not self-evident and obvious to the IDOC. Again, to succeed on his claim, Powell must show prison officials acted with deliberate indifference, meaning they "*knew* that harm to a federally protected right was substantially likely and . . . *failed* to act on that likelihood." *Hildreth*, 960 F.3d at 431 (quoting *Lacy*, 897 F.3d at 862) (emphasis in original).

The IDOC says all Powell has is "self-serving" testimony regarding his prescriptions and grievances, and that uncorroborated self-serving statements cannot defeat a motion for summary judgment. But the Seventh Circuit has "taken pains" to reject the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is "self-serving." *Whitaker v. Wis. Dep't of Health Servs.*, 849 F.3d 681, 685–86 (7th Cir. 2017) (cleaned up); *see also Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017) ("*Everything* a litigant says in support of a claim is self-serving, whether the statement comes in a complaint, an affidavit, a deposition, or a trial. Yet self-serving statements are not necessarily false; they may be put to the test before being accepted, but they cannot be ignored.") (emphasis in original).

Powell says someone took his walker away and that he complained about his lack of a walker at Dixon. True, there is no documented record of such a complaint, and it is clear Powell knew how to utilize the grievance process. But these facts go to the weight of the evidence and Powell's credibility, matters inappropriate for resolution

11

at summary judgment.  *See United States v. Funds in the Amount of One Hundred Thousand One Hundred & Twenty Dollars ($100,120.00)*, 730 F.3d 711, 717 (7th Cir. 2013) ("To reject testimony because it is unsubstantiated and self-serving is to weigh the strength of the evidence or make credibility determinations—tasks that belong to the trier of fact.").  The fact that the IDOC "may have thought" it was providing an adequate accommodation "does not preclude a finding of deliberate indifference" on its part. *Phipps v. Sheriff of Cook Cnty.*, 681 F. Supp. 2d 899, 919–20 (N.D. Ill. 2009).

For all of these reasons, the IDOC's motion for summary judgment is denied.

## **CONCLUSION**

The IDOC's Motion for Summary Judgment [36] is denied.  Telephonic status hearing is set for 6/11/2024 at 10:20 a.m.

It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Date: May 14, 2024